**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY**

ACCELERANT SPECIALTY INSURANCE
COMPANY, HADRON SPECIALTY
INSURANCE COMPANY, SPINNAKER
SPECIALTY INSURANCE COMPANY,
TEXAS INSURANCE COMPANY,
PALOMAR EXCESS AND SURPLUS
INSURANCE COMPANY AND LLOYD'S
SYNDICATES PER UMR
B0507GO2500002,

               Plaintiffs,

v.

REAGAN PRINCE,

               Defendant.

)
)
)
)
)   **C/A No. 2:26-cv-01299-RMG**
)
)
)   **COMPLAINT FOR DECLARATORY**
)           **JUDGMENT**
)
)
)
)
)
)
)
)
)

**TO:  ABOVE-NAMED DEFENDANT:**

Plaintiffs, ACCELERANT SPECIALTY INSURANCE COMPANY, HADRON SPECIALTY INSURANCE COMPANY, SPINNAKER SPECIALTY INSURANCE COMPANY, TEXAS INSURANCE COMPANY, PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY AND LLOYD'S SYNDICATES PER UMR B0507GO2500002 (collectively, "Insurers" or "Plaintiffs"), hereby sue Defendant, REAGAN PRINCE ("Defendant"), and as grounds therefore states as follows:

**JURISDICTION AND VENUE**

1. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

2. Plaintiffs designate this as an admiralty and maritime cause within the meaning of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as it

1

involves a dispute regarding a marine insurance contract. Plaintiffs invoke the provisions of Rule 9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3. Venue is proper within the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1391(b) because the Policy at issue states that any dispute shall be heard where the insured or where the insured's agent resides. Both, the insured and insured's agent reside in the state of South Carolina, rendering the District of South Carolina a contractually agreed-upon venue.

3. All conditions precedent to the filing of this action have occurred, been waived, or have otherwise been complied with.

4. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

**PARTIES**

5. At all times material to this action, Accelerant Specialty Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

6. At all times material to this action, Hadron Specialty Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia.

7. At all times material to this action, Spinnaker Specialty Insurance Company is and was a domestic surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of New Jersey.

2

8. At all times material to this action, Texas Insurance Company is and was a domestic surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Nebraska.

9. At all times material to this action, Palomar Excess and Surplus Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arizona, with its office and principal place of business located in the State of California.

10. The Certain Underwriters at Lloyd's of London Subscribing to UMR No. B0507GO2500002 are made up of three subscribing syndicates: AEGIS Syndicate 1225 AES, Talbot Syndicate 1183 TAL and Liberty Mutual Insurance Europe SE (Institute of London Underwriters). Each of these syndicates are organized and exist under the laws of the United Kingdom, with offices and principal places of business located in the United Kingdom.

11. At all times material to this action, Reagan Prince is and was an individual residing in the State of South Carolina. He is subject to personal jurisdiction in South Carolina by virtue of the forum-selection clause in the Policy.

## **FACTUAL ALLEGATIONS**

12. This matter arises out of damage sustained to the insured's vessel, an Atlantis, 2015 53' Azimut with Cummins twin 625hp diesel engine, bearing Hull identification: XAX20025G516, M/V "*Adair Marie*", on or about October 9, 2025, when it was allegedly struck by lightning while navigating in the open waters of the Atlantic Ocean off the coast of Jupiter, Florida, allegedly rendering the vessel inoperable. (the "Incident")

13. Defendant submitted a claim arising out of the Incident on a policy of marine insurance that Insurers issued as a Private and Pleasure Yacht Insuring Agreement, Policy No. CSRYP/2505301, with effective dates of August 26, 2025, to August 26, 2026, (the

3

"Policy"). A complete copy of the Policy is attached hereto as **Exhibit** A and is fully incorporated herein.

14. The Policy provides, *inter alia*, $ 695,000.00 in hull coverage with a $ 20,850.00 deductible. See **Ex**. A.

15. On August 26, 2025, Defendant submitted an application for insurance of the Vessel. A copy of the Insurance Application is attached as **Exhibit** B.

16. The Defendant warranted in the application that he would comply with the fire extinguishing equipment requirements, including installation, maintenance, certification, and recharging. Photograph below. *See* **Ex**. **B**, p. 2.

---

**Fire Extinguishing Equipment**

The following requirement is specified within every policy of insurance that we issue:

If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that: all fire extinguishing equipment is properly installed and is maintained in good working order, all fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent, the tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent and that the tanks are recharged as necessary.

For purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging of such systems. Such individual may not be the insured, a Covered Person or any named operator, unless expressly approved by us in writing.

| Do you confirm that you will comply with the Fire Extinguishing Equipment Warranty stated above? | Yes: ☑ | No: ☐ |

2

---

17. The Defendant also represented that he had not been involved in a loss within the past ten (10) years (insured or not), and he had never been convicted of, or pleaded no contest to, any criminal offense, including DUI/DWI. *See* **Ex. B.**

18. As part of the binding process of the Policy, Tim J. Brown at TB Marine Services prepared an Underwriter's Condition & Valuation Survey Report for Insurance. A copy of the Survey is attached hereto as **Exhibit C.**

19. The TBMarine Survey identified multiple safety and compliance deficiencies. Under *"Finding A-1"*, the survey noted that the fixed fire suppression system had no annual inspection tags. Photograph below for "Finding A-1". *See* **Ex. C;** P. 31.



20. The survey furthers identified as *"Finding A-2"*, that the vessel's carbon monoxide detectors, required under ABYC A-24 standard, appear to be original equipment with an expiration date of 2021, past their *"serviceable life"*. *See* **Ex. C**; P. 31, 32.

21. In addition to Findings A-1 and A-2, the survey observed that the vessel's visual distress signals, as required by 33 C.F.R. Federal Regulations, were not sighted onboard.

22. The survey recommended that the fixed fire suppression system be inspected and recertified to comply with ABYC and NFPA standards for vessel safety. The survey also recommended that carbon monoxide detectors be installed in all accommodation spaces to comply with ABYC standards and NFPA regulations.



23. On or about August 26, 2025, the Defendant executed a Letter of Survey Recommendations Compliance ("LOC"), which stated that the fixed fire suppression system inspection and recertification, as well as the installation of the carbon monoxide detectors in accommodation spaces were expected to be completed by September 1, 2025. A copy of August 26, 2025, LOC is attached hereto as **Exhibit D.**

24. The Policy provides, in relevant parts, as follows:

> **Additional Warranties, Terms and Conditions:**
>
> Warranted that the Scheduled Vessel must be in compliance with Section 9, Paragraph xi of the Insuring Agreement in respect to fire extinguishing equipment no later than 1st September 2025 and prior to any operation.

**Private and Pleasure Yacht Insuring Agreement**

1. **Definitions:**

> **xi.** 'Seaworthy' means fit for Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

2. **Insuring Agreement:**

> This is a legally binding insurance contract between You and Us, incorporating in full the application form signed by You. We will provide the insurance coverage described in this Insuring Agreement, in return for payment to Us of the premium due and

compliance by Covered Persons with the provisions, conditions and warranties of this Insuring Agreement.

3.  **Coverage A, Hull, Machinery, Equipment and Dinghy**

...[W]e provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions.

**Exclusions to Coverage A:**

Unless specifically agreed by Us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this Insuring Agreement:

**xiii**. Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being affected as a result of any claim hereunder.

**xiv.** Damage existing prior to the inception date of this Insuring Agreement, whether You are aware of the same or otherwise.

**xviii.** Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

9. **General Conditions & Warranties:**

**i**. It is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes and will not be used for Charter, hire lease or any other commercial activity.

**ii.** It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception.

**iii.** This Insuring Agreement incorporates in full Your application for insurance and together with any endorsements issued herein, constitutes the entire contract between You and Us. At Your request, various provisions of this Insuring Agreement may be varied by Us but only by Our prior written agreement.

*       *       *

**x.** It is warranted that Covered Persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall

7

not be deemed to provide cover or shall We be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Us to any sanction prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America

**xi.** If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that:

a. All fire extinguishing equipment is properly installed and is maintained in good working order.

b. All fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent.

c. The tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent.

d.   The tanks are recharged as necessary.

For purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging  of such systems. Such individual may not be the insured, a Covered Person or any named operator, unless expressly approved by us in writing.

*       *       *

**xiii.** This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision.

*       *       *

**xviii.** Unless We agree in writing to the contrary, if We request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by Us within 30 days of the effective date of this Insuring Agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled professionals using fit and proper materials and that either:

a.   The surveyor who carried out the survey certifies in writing that all recommendations have been completed to their (the surveyor's) satisfaction

prior to any loss and/or claim.

Or,

    b. The professionals/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim Failure to comply with this warranty will void this Insuring Agreement from inception.

*    *    *

**xx**. Where any term herein is referred to as 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this Insuring Agreement from inception, it is hereby agreed that any such breach will void this Insuring Agreement.

*See* **Ex. A**

25. Following the Incident, the Plaintiffs conducted an investigation into the circumstances of the subject loss.

26. As part of Plaintiffs' investigation, they engaged surveyor, Michael Napoli, and claims adjuster, William Boyance, from Sedgwick to survey the Vessel and investigate the claim. A complete copy of Mr. Beyonce's survey report of his and Mr. Napoli's findings, dated January 22, 2026, is attached as **Exhibit E**.

27. Sedgwick's claim investigation reported that the fixed fire suppression system had not been inspected or recertified, the carbon monoxide detectors were not present in the accommodation spaces. *See* **Ex. E.**

28. The report also observed that the visual distress signals were not onboard as required by 33 C.F.R. Federal Regulations. *See* **Ex**. E.

29. Additionally, marine surveyor, Reinier Van Der Herp from RV Damage was retained to perform a desk review of the subject loss. A complete copy of the RV Damage Survey dated January 26, 2026, is attached as **Exhibit F**.

30. Mr. Van Der Herp reviewed photographs and maintenance records provided by the Defendant, which documented water intrusion in electrical boxes and other components, including visible waterlines in the engine compartment, and recent electrical repairs.

31. In the survey's "Incident Summary", the surveyor explains that the vessel experienced partial submersion, as evidenced by waterlines visible in the engine compartment. Photograph below. *See* **Ex. F**, P.3.



View of the starboard forward side of the engine compartment. Note: Red arrow points at waterline on fuel filter.

Photo 1

32. It further explains that "[t]he partial submersion went halfway up the I/R, DC electrical transfer box as sighted from waterlines in an adjacent electrical box. The lower aft contactor (relay) overheated from corrosion and loose connections…" *See* **Ex. F,** p. 1.

33. RV Damage survey indicates that "[t]here is no evidence of a lightning strike and the damage sighted isn't consistent with the type typical to a lightning strike". *See* **Ex. F,** P. 1.

34. The survey further identifies the cause of loss as "Corrosion and loose connections causing a high resistance situation resulting in a fire." *See* **Ex. F**, P.1.

35. The post-loss report indicated that the Vessel had recent electrical repair made a week prior to the Incident. It further states that "[t]he surveyor also stated that the electrical damage is not from an indirect/direct lightning strike but from either an improper repair/missed repair/

corrosion and bad electrical contacts regarding the vessels AC/DC electrical system." *See* **Ex. E,** P. 5, 6

36. An investigation into the named operators, Douglas Prater and Reagan Prince, revealed that on May 27, 2024, Mr. Prince was arrested by the South Carolina Department of Natural Resources on two counts of "Misdemeanor Titling Watercraft Violation," both of which resulted in guilty dispositions on July 1, 2024. A copy of the relevant records are hereby attached as **Exhibit G and Exhibit H.**

37. The investigation further reflects that on May 9, 2021, Mr. Prince was arrested and charged with misdemeanor public disorderly conduct. The charge was resolved on June 29, 2023, following a plea of nolo contendere. A copy of the relevant records is hereby attached as **Exhibit I**.

38. According to the investigation, court records show that Mr. Prince was issued a citation on May 9, 2021, for operating a vehicle at a speed more than 10 but less than 15 miles per hour over the speed limit to which he subsequently entered a plea of nolo contendere. A copy of the relevant records is hereby attached as **Exhibit J**.

39. In addition, Defendant has two open civil cases, including one arising from the May 9, 2021, automobile accident.

40. None of these criminal or civil matters were disclosed in the Original Application, in which the Defendant stated that he had no criminal history or background.

41. Plaintiffs relied upon these representations in issuing the Policy.

### COUNT I – *UBERRIMAE FIDEI*

42. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 41, as if fully set forth herein, and further allege.

43. For hundreds of years, policies of marine insurance have been subject to the well-entrenched doctrine of *uberrimae fidei*—the duty of utmost good faith.

44. This duty requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of insurance risk.

45. This duty extends even to material facts that are not specifically inquired into by the insurer.

46. The Policy, as one of marine insurance—and pursuant to the terms of its choice-of law provision—is governed by the principle of *uberrimae fidei*.

47. During the process of applying for insurance, Defendant submitted an application for insurance, which requested that Mr. Prince provide details of any past criminal convictions or pleas of no contest with respect to the Vessel's named operators. *See* **Ex. B**.

48. Upon information and belief, Mr. Prince's representations regarding prior convictions of the Vessel's named operators were not true.

49. Specifically, upon information and belief, Insured and named operator Reagan Prince was arrested on May 27, 2024, by the South Carolina Department of Natural Resources on two counts of "Misdemeanor titling watercraft violation," both of which resulted in guilty dispositions on July 1, 2024. *See* **Ex. G and Ex. H**.

50. Upon information and belief, Insured and named operator, Reagan Prince was arrested on May 9, 2023, and charged with misdemeanor public disorderly conduct and entered a plea of nolo contendere. *See* **Ex. I**.

51. Additionally, upon information and belief, court records demonstrate that Mr. Prince was issued a citation on May 9, 2021, for operating a vehicle in excess of the posted speed limit, to which he thereafter entered a plea of nolo contendere. *See* **Ex. J.**

52. The Defendant also affirmatively represented in the insurance application that he would comply with the applicable fire extinguishing equipment warranty.

53. To the extent that the vessel's fire extinguishing equipment was not in compliance with the representations made in the insurance application, it appears that the Defendant made a material misrepresentation. As a result, the Policy may be rendered void ab initio due to the failure to provide truthful and complete information at the time of application.

54. The insurance application states, in pertinent part: "Any misrepresentation in this application for insurance may render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application." *See* **Ex. B, P. 7**.

55. Plaintiffs, or any reasonably prudent, intelligent underwriter, would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had Plaintiffs known any one or any combination of the facts set forth above, or others to be established in the course of discovery.

56. Therefore, Defendant breached the duty of *uberrimae fidei*, rendering the Policy void from its inception, and there is no coverage for any claims arising thereunder.

WHEREFORE, Plaintiffs respectfully request judgment in their favor that Defendant violated the doctrine of *uberrimae fidei*, such that there is no duty to defend or indemnify Defendant for the damage to the Vessel or the subject Incident, and the Policy is void from its inception. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

### COUNT II – BREACH OF GENERAL CONDITION XIII

57. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 56, as if fully set forth herein, and further allege.

58. General condition xiii. of the Policy provides that:

13

"This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision."

59. At the time of the insurance application, and when Mr. Prince signed such application, Defendant represented to Insured's that none of the Vessel's named operators had past or prior criminal convictions. *See* **Ex. B.**

60. Upon information and belief, Defendant's representations were not true.

61. Specifically, upon information and belief, Insured and named operator, Reagan Prince was arrested on May 27, 2024, by the South Carolina Department of Natural Resources on two counts of "Misdemeanor titling watercraft violation," both resulting in guilty dispositions on July 1, 2024. *See* **Ex. G and H**.

62. Upon information and belief, Insured and named operator, Reagan Prince, on May 9, 2021, was arrested and charged with misdemeanor public disorderly conduct, entering a plea of nolo contendere. *See* **Ex. I**.

63. Additionally, upon information and belief, court records demonstrate that Mr. Prince was issued a citation on May 9, 2021, for operating a vehicle more than the posted speed limit, to which he thereafter entered a plea of nolo contendere. *See* **Ex. J.**

64. Plaintiffs, or any reasonably prudent, intelligent underwriter, would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had Plaintiffs known any one or any combination of the facts set forth above, or others to be established in the course of discovery.

65. Accordingly, Defendant breached general condition xiii. of the Policy, rendering the Policy void from its inception, and there is no coverage for any claims arising thereunder.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Defendant violated general condition xiii. of the Policy and, as a result, the Policy is void from

14

inception and does not provide coverage for any claims arising from or associated with the Incident. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

### COUNT III - BREACH OF FIRE SUPPRESSION WARRANTY

66. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 65, as if fully set forth herein, and further allege.

67. That the General Condition **xi**. of the Policy warrants that:

"If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is **warranted** that: (a) All fire extinguishing equipment is properly installed and is maintained in good working order; (b) All fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent; (c) The tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent; and (d) The tanks are recharged as necessary."

68. The warranty further explains that:

"[f]or purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging of such systems. Such individual may not be the insured, a Covered Person or any named operator, unless expressly approved by us in writing."

69. Pursuant to general condition **xx**., any breach of warranty operates to void the Policy from inception.

70. Under the law of New York, which governs the Policy in the absence of entrenched federal maritime law, express warranties in marine insurance policies are strictly enforced, and a breach thereof voids coverage irrespective of any causal relation to the loss.

71. At the time of the loss, the Vessel's fixed fire suppression system had not been inspected or recertified.

72. As a result, the Policy's Fire Suppression Warranty was violated, and pursuant to general

15

condition **xx.**, the Policy is void from its inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Defendants violated the Policy's fire suppression warranty, such that the Policy is void from its inception, and that Insurers have no duty to defend or indemnify Defendants with respect to either any potential claim for hull damages or for third-party liability coverage. Insurers further request such further relief as the Court may deem just and proper.

### COUNT IV - BREACH OF SURVEY COMPLIANCE WARRANTY

73. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 72, as if fully set forth herein, and further allege.

74. General Condition **xviii**. of Policy warrants:

"…request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by Us within 30 days of the effective date of this Insuring Agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled professionals using fit and proper materials…" *See* **Ex. A**.

75. The Policy also includes the following under Additional Warranties, Terms and Conditions:

"Warranted that the Scheduled Vessel must be in compliance with Section 9, Paragraph xi of the Insuring Agreement in respect to fire extinguishing equipment no later than **1st September 2025** and prior to any operation."

76. The Underwriter's Condition & Valuation surveyor noted that the fixed fire suppression system did not have current annual inspection tags, and the vessel carbon monoxide detectors in the accommodation spaces appeared to be original equipment with an expiration date of 2021.

77. Consequently, the Survey made multiple recommendations regarding the fixed fire suppression system and the carbon monoxide detectors.

16

78. During the application process, Defendant submitted a Letter of Survey Recommendations Compliance indicating that the recommendations were expected to be completed by September 1, 2025. *See* **Ex. D.**

79. At the time of the subject loss, the survey recommendations had not been addressed and remain unresolved.

80. Pursuant to general condition **xx.**, failure to comply with this warranty will void coverage from its inception.

81. This warranty has been held to be unambiguous. *See Clear Spring Prop. & Cas. Co. v. Bluewater Adventures of Sarasota*, No. 22-CV-60554-GAYLES/Strauss, 2022 WL 18027821, at *8 (S.D. Fla. Dec. 6, 2022); *Viking Power I*, 608 F. Supp. 3d at 1228. ("To begin, Defendants again fail to explain what about the survey-compliance warranty is ambiguous. Nowhere do they identify a reasonable, alternative reading of the warranty that would entitle them to coverage.").

82. As such, Defendant failed to comply with the survey compliance warranty, therefore the Policy is void from inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that the Defendant breached the Policy's Survey Compliance Warranty, such that there is no coverage for the subject loss. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

## COUNT V–BREACH OF GENERAL CONDITION X

83. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 82, as if fully set forth herein, and further allege.

84. General Condition x., which requires compliance with all laws and regulations states

in relevant part that: "It is warranted that Covered Persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel."

85. The C&V Survey recommended the installation of carbon monoxide detectors in accommodations spaces, as required by ABYC A-24 standards and NFPA regulations.

86. In addition, the C&V Survey and the post-loss report observed that the Vessel failed to ensure the presence of visual distress signals onboard, as mandated by 33 C.F.R. Federal Regulations.

87. To the extent that Defendant did not comply with all relevant laws and regulations, and therefore failed to comply with General Condition x, the Policy is void from inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that the Defendant breached the Policy's Compliance with Safety standards and/or Guidelines, breaching General Condition x., such that there is no coverage for the subject loss. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

## COUNT VI – EXCLUSIONS XIII AND XIV TO COVERAGE A OF THE POLICY

88. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 87, as if fully set forth herein, and further allege.

89. The Policy specifically excludes hull coverage for the following:

> **xiii**. Any loss of value of the Scheduled Vessel and/or its equipment **as a result of repairs and/or replacements (*emphasis added)*** being effected as a result of any claim hereunder.

> **xiv.** Damage **existing prior to the inception** (*emphasis added*) date of this Insuring Agreement, whether You are aware of the same or otherwise.

90. The post-loss report indicated that Vessel did not show any visible or obvious damage consistent with a direct or indirect lightning strike. It further noted that the vessel had recent electrical repairs made a week prior to the incident.

91. The surveyor concluded, "[t]he electrical damage is not from an indirect/direct lightning strike but from either an improper repair, missed repair, corrosion, or bad electrical contacts regarding the vessel's AC/DC electrical system." *See* **Ex. E**.

92. Thus, Defendant's claim is excluded from coverage under Exclusions xiii. and xiv. to Coverage A, and Insurers have no duty to defend or indemnify the loss or related allegations.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court to adjudge and declare that Exclusions xiii. and xiv. to Coverage A of the Policy applies to the claims asserted by Mr. Prince and that there is no coverage for the Incident. Plaintiffs' further requests such other relief as the Court may deem just and appropriate under the circumstances.

## COUNT VII - LACK OF FORTUITY

93. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 92, as if fully set forth herein, and further allege.

94. The insuring agreement for hull loss contained within the Policy provides, *inter alia*, that "If a sum insured is shown for Section A of the insuring agreement declaration page, **we provide coverage for accidental physical loss of or damage to the Scheduled Vessel** which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles, and exclusions." *(emphasis added)*.

95. The subject loss and/or damage to the Vessel does not constitute *"accidental physical loss or damage"* for which coverage is afforded under the express terms of the Policy.

96. The post loss investigation, in its findings, stated that that Vessel's generator had been replaced because of a partial sinking, as reflected in the maintenance records. Photograph below, *See* **Ex. F, P. 11**.



97. The post-loss report and survey revealed photographs depicting progressive water lines inside electrical boxes and other components where water should not have entered.

98. The Vessel also had electrical repairs a week prior to the Incident.

99. The post-loss investigation report concludes that the cause of loss is corrosion and loose connections, indicating high levels of water intrusion, as noted in the RV Damage Survey.

100. The surveyor stated that the electrical damage is not from an indirect or direct lightning strike but from either an improper repair, missed repair or corrosion and bad electrical contacts regarding the AC/DC electrical systems vessels.

101. The adjustment report further indicates that there was no visible or apparent damage to the Vessel consistent with a lightning strike. *See* **Ex.**, **P 6**.

102. Plaintiffs contend the loss resulted from improper or missed repairs, corrosion, and/or faulty electrical contacts in the vessel's AC/DC systems; therefore, the loss is not fortuitous, and the Policy does not provide coverage for the loss.

WHEREFORE, the Plaintiffs respectfully request judgment in its favor that the loss was not fortuitous, such that there is no coverage for the subject loss. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

### COUNT VIII– LACK OF ACCIDENTAL EXTERNAL EVENT

103. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 102, as if fully set forth herein, and further allege.

104. Exclusion **xviii**. to the Policy's hull coverage provides that "Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire."

105. There was no "accidental external event" within the meaning of the Policy that caused the Vessel's loss.

106. To wit, the loss was not caused by a collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike, or fire.

107. Rather, because the loss was due to either improper repairs, missed repairs or corrosion

21

and bad electrical contact regarding the vessel's AC/DC electrical systems, it was not fortuitous, and the Policy does not provide coverage for the loss.

108. Consequently, any resulting damage to "engines, mechanical and electrical parts" is not covered.

WHEREFORE, the Plaintiffs respectfully requests judgment in its favor that there is no insurance coverage for damages to the engines, mechanical, and electrical parts of the Vessel as a result of the loss insofar as there was no "accidental external event." Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

### COUNT IX – BREACH OF EXPRESS WARRANTY OF SEAWORTHINESS

109. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 108, as if fully set forth herein, and further allege.

110. General condition ii. of the Policy provides that "It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception. "

111. Furthermore, the Policy defines that a Vessel is seaworthy in pertinent part as "[F]it for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew." *See* **Ex. A, p. 3**.

112. Seaworthiness warranties are generally subject to entrenched admiralty law requiring their strict application. *Aguirre v. Citizens Cas. Co. of N.Y.*, 441 F.2d 141, 145-46 (5th Cir. 1971).

113. The investigation reports reflect that, prior to submitting the policy application, the Insured represented that the Vessel was in good and seaworthy condition and had not experienced any known perils, including prior instances of water ingress.

114. The C&V survey did not report that the Vessel had previously experienced a partial submersion or water ingress event.

115. Upon information and belief, at the time of the loss, the Vessel was unseaworthy due to prior partial submersion and/or water ingress, causing corrosion, loose connections, and damage to mechanical and electrical components.

116. As a result, Defendant breached the Policy's express warranty of seaworthiness, therefore voiding coverage from its inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that Mr. Prince breached the Policy's express warranty of seaworthiness, such that there is no coverage for the subject loss and the Policy is void from its inception. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

## COUNT X – IMPLIED WARRANTY OF SEAWORTHINESS

117. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 116, as if fully set forth herein, and further allege.

118. Under the general maritime law of the United States, there is implied in every policy of marine insurance a warranty that at the inception of the policy, the insured vessel is seaworthy.

119. A vessel is seaworthy if it is reasonably fit for its intended use.

120. Nevertheless, in its investigation determined, *inter alia*, that it appears that there was a prior water ingress event that was not disclosed in the Original insurance application, the loss appeared to be caused by corrosion, loose connections and damage to mechanical and electrical components, the fire suppression had not been properly inspected or recertified, and the carbon monoxide detectors had not been installed in the accommodation spaces.

121. These findings support a breach of the implied warranty for seaworthiness, as the vessel was unfit for its intended use at the time the policy was issued.

122. Accordingly, the Defendant breached the implied warranty of seaworthiness implied in every policy of marine insurance, including this Policy, which avoids coverage for the subject loss.

WHEREFORE, Plaintiffs respectfully request to adjudge and declare that Mr. Prince violated the Policy's implied negative warranty of seaworthiness and that consequentially, there is no coverage for the subject loss. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

## COUNT XI - BREACH OF GENERAL CONDITION XIII

123. Plaintiffs hereby reallege and reincorporate by reference the allegations contained in paragraphs 1 through 122, as if fully set forth herein, and further allege.

124. General condition **xiii**. of the Policy provides that:

> "This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision."

125. Plaintiffs would not have issued the Policy, would not have issued it at the same premium, or would not have issued it on the same terms and/or conditions, had they known any one or any combination of the facts set forth in paragraphs 16 through 23, paragraphs 26 through 41, or others to be established in the course of discovery.

126. Accordingly, the Defendant, Mr. Prince, breached general condition **xiii**. of the Policy, rendering the Policy void from its inception.

WHEREFORE, Plaintiffs respectfully request this Honorable Court to adjudge and declare that the Defendant breached general condition xiii. of the Policy, such that there is no coverage for

the subject loss and the Policy is void from its inception. Plaintiffs further request any further relief that the Court deems just and appropriate under the circumstances.

Plaintiffs hereby request and demand all interest, costs and attorney's fees permitted by any applicable contract, law or statute.

Respectfully submitted,

TECKLENBURG, JENKINS & JACOBY, LLC

_/s/_Rivers T. Jenkins, III_____
Paul F. Tecklenburg (Fed ID #3702)
Rivers T. Jenkins, III (Fed ID #5631)
Colleen E. Jacoby (Fed ID #13238)
1250 Folly Road
Charleston, SC  29412
Telephone:    (843) 534-2628
Facsimile:    (843) 534-2629
Email:      pft@tecklaw.net
            rtj@tecklaw.net
            cej@tecklaw.net

-and-

**DAVANT LAW, P.A.**
Charles S. Davant
Florida Bar No. 15178
100 NE Third Ave, Suite 440
Fort Lauderdale, FL 33301
Telephone: (954) 414-0400
Email:  csd@davantlaw.com

*ATTORNEYS FOR THE PLAINTIFFS*

Charleston, South Carolina
March 26, 2026